**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: November 4, 2025

S25Y1085. IN THE MATTER OF HERALD J.A. ALEXANDER.

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of the State Disciplinary Review Board ("Review Board"), which reviewed the report and recommendation of Special Master Patrick H. Head, at the request of Herald J.A. Alexander (State Bar No. 008863), who has been a member of the State Bar since 1983, pursuant to Bar Rules 4-214, 4-215, and 4-216. The State Bar charged Alexander with violating Rules 1.8(a) and 8.4(a)(4) of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") found in Bar Rule 4-102(d). The State Bar alleged that Alexander solicited, under false pretenses, $200,000 from the grievant, who had been his long-term client, and failed to return those funds. The maximum penalty for a violation of Rule 1.8(a) is a public reprimand

and for Rule 8.4(a)(4) is disbarment. The Special Master granted the State Bar's motion for default after Alexander filed his answer to the formal complaint one day late with the State Bar, having incorrectly filed it the day before in this Court. Following an evidentiary hearing on aggravating and mitigating circumstances, the Special Master issued his report and recommendation, recommending disbarment. Alexander sought review by the Review Board, which agreed that default was warranted, and adopted the findings of the Special Master and recommended disbarment. Alexander has now filed exceptions in this Court, including to the grant of the motion for default, and the State Bar has responded. Upon our careful review of the record, we agree that the Special Master abused his discretion by granting the motion for default. Accordingly, we remand to the Special Master for a hearing on the merits.

1. *Procedural History*

On April 5, 2024, the State Bar filed a formal complaint and petition for appointment of a Special Master, and this Court then entered an order appointing the Special Master on April 9, 2024.

Alexander did not acknowledge service. On May 23, 2024, the State Bar personally served Alexander by hand delivery with the formal complaint, notice of probable cause, petition for appointment of a Special Master, and order appointing the Special Master. On June 21, 2024, respondent requested an extension of time to file his answer, which was granted through July 2, 2024. On July 2, after 5:00 p.m., Alexander filed his answer but mistakenly did so on this Court's docket. On the morning of July 3, 2024, this Court's Clerk's Office sent an email to Alexander and attorneys with the State Bar, informing them that the answer was filed through the wrong e-file system. Accordingly, Alexander then filed his answer on July 3 through the State Bar's e-file system.

The Special Master then sent an email to the parties, letting Alexander know that it appeared he was in default, having filed his answer untimely. Alexander responded that he thought the Clerk's email rectified the filing date issue and asked if he needed to file a formal motion. The Special Master told Alexander he could not "give legal or procedural advice to the parties," and directed him to

3

communicate with the State Bar attorney. The Formal Complaint record shows that Alexander communicated with the State Bar attorney but did not file a motion to open default or any other pleading. Then, on July 31, 2024, the State Bar filed a motion for default. After Alexander failed to respond to that motion, on September 3, 2024, the Special Master emailed the State Bar (copying Alexander) and directed the State Bar to prepare an order granting the motion for default because there had been no response from Alexander. Just a few minutes later, Alexander filed a motion seeking to recognize August 30, 2024, as the service date for the State Bar's motion for default,[1] asserting that he did not receive the motion until then and that the United States Postal Service's delivery problems during that time were well documented. The State Bar opposed Alexander's motion, and the Special Master rejected his motion and granted the State Bar's motion for default.

---

[1] We note that Alexander's filing was titled "Motion to Recognize August 30, 2024 A.D. as the Service Date for the State Bar's Motion for Default Judgment." However, there is no "default judgment" at issue in this case – only a motion for default.

The Special Master then set a hearing date for the purpose of determining any applicable aggravating and mitigating factors, which Alexander objected to on the basis that he was deprived of the opportunity to respond to the motion for default.[2] However, the hearing was held as scheduled. At the hearing, Alexander reargued that his answer should have been accepted as timely, noting that there had been informal requests previously in this case done via email, including when he asked for an extension of time to file his initial answer. However, the Special Master responded that he could not "circumvent the law" and the procedure in place for opening default. Alexander then "asserted the Fifth" and did not respond to many of the questions regarding the facts and circumstances related to this disciplinary matter during the hearing.

2. *Special Master's Report and Recommendation*

Subsequently, based on Alexander's default, the Special Master issued a report and recommendation, recommending

---

[2] Alexander's filing was titled "Objection to Aggravating and Mitigation Hearing Based on Default Judgment." But again, there was no "default judgment" entered in this case – only a motion for default.

disbarment. The Special Master further concluded that, even if there had not been a default, by asserting his Fifth Amendment right to remain silent under the United States Constitution to each question he was asked regarding this disciplinary matter, Alexander's answers to those questions would have been against his interest. See *Simpson v. Simpson*, 233 Ga. 17, 21 (1974) (holding that in a civil case, although a person has the right to invoke the Fifth Amendment and refuse to testify, an inference against his interest may be drawn by the factfinder when he does so). The Special Master also found that Alexander had been "disingenuous in his position that he did not receive the Motion for Default either by mail or through his email."

3. *Alexander's Exceptions and the State Bar's Response*

Alexander filed exceptions to the Special Master's report and, in relevant part, took issue with the finding that he was in default. He noted that the Supreme Court's name and case number (S24B0876) are in the caption of the case, and so it was reasonable that he thought he needed to file his answer in this Court, rather

6

than at the State Bar. In addition, he noted that there have been many informal communications via email in these proceedings, and he had been led to believe through these communications that no formal motion to open default was required. Finally, he argued that the motion for default was granted without permitting him an opportunity to respond even though the "undisputed" evidence showed that he did not receive the motion for default until August 30 due to mail issues. Moreover, he noted that he objected to proceeding with the hearing on aggravating and mitigating evidence, because he was not in default and it was unreasonable and unjust for him not to have his answer recognized.

In response, the State Bar contended that Alexander only challenged the "fairness" of the default ruling and offered no reason why the default decision was legally flawed or erroneous. It argued that the Special Master's decision was well within his discretion.

4. *Review Board's Report and Recommendation*

Following oral argument, the Review Board issued its report. First, the Review Board found that the grant of the motion for

default was warranted because while it "would have easily found the filing of the Answer with the Supreme Court … as excusable neglect if [Alexander] had presented a meritorious defense," he "failed to do so."[3] Thus, the opening of default failed. See *In the Matter of Turk*, 267 Ga. 30, 30–31 (1996). The Review Board then adopted the Special Master's findings of fact, conclusions of law, his analysis of the ABA Standards, and his conclusion as it pertained to the level of discipline. Accordingly, the Review Board recommended disbarment.

5. *Analysis and Conclusion*

Alexander filed a response in this Court, continuing to argue that the Special Master's handling of his answer and the State Bar's motion for default have deprived him of the opportunity to respond and defend himself against the alleged violations. He claims that the default precluded any form of discovery in this matter and that because he was unable to fully engage in the proceedings, there was

---

[3] The Review Board also refers to an "Entry of Default Judgment" in its report, but we read this to refer to the grant of the motion for default.

insufficient evidence to support the violations.

The State Bar has responded, contending that the Review Board did not err in concluding that the Special Master did not abuse his discretion in granting the motion for default. However, having reviewed the record in this matter, we disagree.

The Special Master determined that he could not recognize the initial answer as timely filed, and that he could not open default because doing so would "circumvent the law," but both conclusions are problematic. As we recently explained in another attorney-default case:

> Rooted within our disciplinary process is a strong preference for "deciding cases on their merits." *In the Matter of Boyd*, 315 Ga. 390, 394 (2022). See also *In the Matter of Sammons, Jr.*, 316 Ga. 885, 893 (2023) (Peterson, P.J., concurring in judgment only) (explaining that the "policy underlying the State Bar disciplinary process has a strong preference for deciding cases on their merits rather than by default" (citation omitted)). The principle that, when possible, disciplinary cases should be decided on the merits is particularly true where the record is clear that the attorney has attempted to cooperate and participate in the disciplinary proceedings. See *Boyd*, 315 Ga. at 394 (vacating the Special Master's order granting the State Bar's motion for default and noting that, although the attorney failed to file a timely

9

answer to the Formal Complaint, "the record suggests that [she] cooperated and participated in the Bar's investigation of the complaint and processes"). In *Boyd*, we further explained that "defaults in disciplinary cases most often involve respondents who completely fail to respond to disciplinary proceedings." Id. Cf. *In the Matter of Cleveland*, 317 Ga. 515, 515 (2023) (attorney deemed in default where attorney failed to participate in the disciplinary process). Moreover, where an attorney who is participating in the disciplinary process is unreasonably deprived of the opportunity to defend the charges against him, due process concerns may arise. See generally *In the Matter of Brown*, 319 Ga. 465, 478 (2024) (noting that "the Due Process clause contained in the Georgia Constitution guarantees the right to work in one's chosen profession free from unreasonable government interference" (citation omitted)).

*In the Matter of Bonnell*, Case No. S25Y0965, slip op. at 12–13 (Sept. 16, 2025).

Alexander makes a strong case that his initial answer should have been recognized as timely filed. Bar Rule 4-212(a) provides, "[t]he respondent shall file and serve his answer to the formal complaint of the State Bar of Georgia pursuant to Rule 4-221(b) within 30 days after service of the formal complaint [or by the due date provided in a granted extension of time]." Here, Alexander did file his answer timely on July 2, albeit on this Court's docket instead

of on the State Bar's docket. And although Alexander filed the answer incorrectly, he nonetheless attempted to file an answer, took steps to have his filing recognized as timely, and disputed the issue throughout the proceedings. See *Bonnell*, Case No. S25Y0965, slip op. at 1-2. Moreover, as we noted in *Bonnell*:

> [T]here is nothing in Bar Rule 4-212(a) that indicates that a case is *automatically* in default if a respondent does not timely answer the Formal Complaint. Compare Bar Rule 4-212(a) ("[i]f the respondent fails to answer or to obtain an extension of time for his answer, the facts alleged and violations charged in the formal complaint shall be deemed admitted") with OCGA § 9-11-55(a) (providing that if an answer is not timely filed, "the case shall *automatically* become in default" (emphasis added)).

See Case No. S25Y0965, slip op. at 14–15.

Because Alexander was not automatically in default when he failed to timely file his answer through the State Bar's e-filing system, the Special Master had discretion to deny the State Bar's motion for default. And under the unique circumstances present in this case, we conclude that the grant of that motion was an abuse of discretion. We have noted that default in disciplinary cases most

11

often involves respondents who completely fail to respond to the disciplinary proceedings. Id. at 394. And enforcing default, instead of proceeding on the merits, in a case such as this one where the attorney filed his answer with this Court by the due date, promptly attempted to correct his filing error the next day by filing his answer with the State Bar, and sought to engage in the proceedings would not protect the public from those seeking to evade discipline. See *Sammons*, 316 Ga. at 893 (Peterson, P.J., concurring). While it is certainly true that Alexander invoked the Fifth Amendment to the United States Constitution in response to most of the questions regarding the facts of this case at the hearing on mitigation and aggravation, he indicates that he would have answered the questions presented to him had he been able to fully engage in the proceedings, and that he would have provided more information regarding the conduct at issue.

Accordingly, we disagree with the Review Board that default was warranted here and hold that the Special Master abused his discretion in granting the State Bar's motion for default under these

circumstances. The Special Master was not compelled to reach that decision and the facts here do not support it.[4] We agree with Alexander that this case should proceed on the merits. Therefore, we vacate the Special Master's order granting the State Bar's motion for default and the Special Master's report and recommendation, and we remand this matter to the Special Master with direction that he hold a hearing and issue a new report and recommendation on the merits of the case in accordance with the applicable rules and law.

*Remanded with direction. All the Justices concur.*

---

[4] Because we hold that a finding of default was not warranted here, we do not reach the issue of whether the Special Master erred in failing to open default.